Brinkerhoff, J.
This is a petition in error filed here to reverse
the judgment'of the district court of Columbiana county, in an action of debt on a promissory note given by the defendants in error, who were defendants below, to the plaintiff in error, who was plaintiff below. The plea was usury as to a part of the amount appearing to be due upon the face of the note, and a tender as to the residue. On this plea, issue was taken, and was tried by a jury, who found for the defendants. A motion for a new trial was made, heard, and overruled; and the errors alleged.are: 1. That the court erred in overruling the motion for a new trial on the ground that the verdict was against the evidence; and, 2. That the court erred in its charge to the jury on the law of the case.
*233 As to the first error alleged, we have looked into the evidence ■embodied in the bill of exceptions, and we are of opinion that there was sufficient evidence to sustain the verdict. Indeed, this point is not seriously urged in the argument for the plaintiff in ■error.
As to the second assignment of error, Alfred Hall, who was one of the makers of the note sued on, but who had been discharged by •a certificate of bankruptcy, and was admitted as a witness in the case, testified, among other things, as follows:
“ In June, 1839,1 believe in the fore part of the month, I tendered to said Jennings $600, by check of Mendenhall & Richardson, on the Commercial Bank of Lake Erie. I made the tender in Kellogg’s hotel, in Cleveland, nearly opposite to the bank. Jennings promptly refused on account of the amount. I told him the cheek was good, and urged him to take it, and asked him to step over to the bank with me, and I would draw the amount of said check, .and pay it to him. He said he did not doubt it; he knew Mendenhall, and that the check was good; that if I'would get their cheek for the full amount, he would accept it. I then told him I knew the exact amount I had received *upon the note, and had calculated the interest upon it, and that I knew the amount tendered would more than cover the amount received, and interest on it to that time. He said I had better get their check for the whole amount; that he had indorsed the note to some other person, and could not avoid payment of the full amount of the note. I knew, from the representation of said Hall & Richardson, that the amount cf said check was in bank at the time of tender, and was also assured it was there by James S. Clark.”
Subsequently, this witness testified that he had been mistaken as to the bank on which the check was drawn. That it was the Bank of Cleveland, instead of the Commercial Bank of Lake Erie.
Zalmon Fitch, who had in his possession the books of the Bank of Cleveland, gave evidence tending to prove that at the time the check was tendered, the drawers thereof had funds in the bank sufficient to cover the amount of the check.
Here, then, was testimony in the case tending to prove that the maker of the note sued on, and for whom the defendants in error were sureties, tendered to the plaintiff a check on a bank situate just across the street from where the tender was made; that the drawers had funds in the bank sufficient to meet the check; and *234 that the plaintiff not only did not object to the tender on the ground that it was not made in coin, but expressly declared that the check was good, and that he would receive it if the amount were (Sufficient.
This, with other testimony, being in the case, the court on the subject of the tender, charged the jury as follows :
“ That as a general principle of law, a tender, to be of value, should be made in gold or silver coin, of such description as is legalized by act of Congress. But that the parties might waive such kind of tender; and that a tender of bank-bills, or a bank-check, would be good, if, at the time the same was made, the party to whom the same was made did not object thereto, and said and did that which satisfies the jury, that the party to whom the tender was made, was willing to receive, and offered to and would have taken the same, had it not been for the simple objection *that the amount was less than the sum claimed to be due.”
The court further charged the jury: “ That if they found the tender was made in a bank-check, under the circumstances before mentioned, still the tender was a nullity, if the jury found that, at the time the tender was made, the check, for want of funds or credit of the drawer of the check, in the bank on which the same was drawn, or for other cause, would not have been paid on presentation-.” .
This charge of the court below being excepted to and assigned for error, there is presented the simple question, whether a creditor, to whom a tender of payment is made in a medium other than the constitutional currency, may expressly waive any objection to the quality of the proposed medium of payment, and bind himself to such express waiver ? It seems to us to be clear that the creditor may thus bind himself, at least until he shall have retracted his approval of the medium of payment offered, and notified the debtor that he demands payment in coin. To hold otherwise, would enable the creditor to lull the debtor into a false security, throw him off his guard, prevent his tender of payment in coin, and at last to come in and take advantage of his own wrong.
It has long been settled, both in England and this country, by cases too numerous and familiar to need to be cited, that a tender of payment in current bank-notes, where bank-notes constitute the common currency of the country, is good, unless objected to on account of the medium of payment offered. And elementary writers
*235 have gone so far as to say that “ if a tender is made in a bank-check, which is refused because it is not drawn for so much as the creditor demands, it is a good tender.” Greenl. on Ev., sec. 601. “And that a tender of a check is a sufficient tender, unless objection be made at the time by the creditor, to receiving payment in them.” Story on Contr.,see. 1004. This places bank-checks on an equality with bank-notes, and holds mere silence on the part of the creditor conclusive evidence of a waiver on his part of any objection to the-proposed medium of payment. And there seems to be one English case to ^support this doctrine, that of Jones v. Arthur, 8 Dowl. P. C. 442. But we are not now called on, nor are we inclined to go to that extent. On a somewhat extensive examination of the cases, it seems to us to be the better and more generally-received doctrine, that mere silence is held to be a waiver of objection in the case of current bank-notes, for the reason that they constitute the common currency of the country, and are, by all classes, paid out and received as money; which is a reason that does not fully apply to-bank-checks. All the cases, however, proceed on the principle, that where all objection to the proposed medium of payment is waived, the tender is good, though not made in coin; and the only difference between them is on the question as to what shall be held to be con-conclusive of such waiver. But in the case before us, the jury, under the charge of the court, must have found an express waiver; and in such a case, where there is nothing left to presumption, surely* the creditor must be bound by his own act, and can not be permitted to make a constitutional right- an instrumentality through which to effect a positive wrong.
We can see no error in the charge of the court, and the judgment is therefore affirmed,
Bartley, C. J., and Swan, Scott, and Sutliee, JJ., concurred.